UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:
THOMAS ALLEN CHESLEY,

       Debtor,
_____/


THOMAS ALLEN CHESLEY

       Appellant,

v.                              Case No. 8:13-cv-3238-T-33
                                Bankr. No. 8:11-bk-13785-KRM

SUSAN K. WOODARD, Chapter 7
Trustee, and TIMOTHY BEAHAN,

       Appellees.
_____/

**ORDER**

This matter comes before the Court on appeal from the Bankruptcy Court's Order granting Chapter 13 Trustee's Motion for Summary Judgment on Amended Trustee's Objection to Debtor's Property Claimed as Exempt on Amended Schedule C and Creditor Timothy Beahan's Joinder in Trustee's Motion for Summary Judgment, filed on September 23, 2013. (Doc. # 1-2). For the reasons stated below, the Court affirms the Bankruptcy Court's Order.

**I.   Background**

Appellant Thomas Allen Chesley filed a Chapter 13 bankruptcy petition with the United States Bankruptcy Court for the Middle District of Florida on July 21, 2011. (Case No. 8:11-bk-13785-KRM[1], Doc. # 1). Prior to filing for bankruptcy, however, Chesley was involved in a personal injury action against Parts Depot, Inc., which arose out of a motor vehicle accident. (Doc. # 1-16 at ¶ 2, Doc. # 12 at 11). Chesley negotiated a settlement of the personal injury action with Parts Depot, Inc. in the amount of $1,200,000.00 in exchange for a general release of all claims. (Doc. # 1-16 at ¶ 3, Doc. # 1-19, Doc. # 12 at 11). According to Chesley, the $1,200,000.00 was compensation for Chesley's "injuries sustained from the collision, as lost earning capacity, past medical expenses, future medical expenses and past lost wages or earning capacity." (Doc. # 12 at 11). However, the general release provided no specific allocation regarding the settlement proceeds nor any representation characterizing the settlement proceeds, except to state that the proceeds represented consideration for the release. (Doc. # 1-16 at ¶ 16).

---

[1] On January 8, 2014, the bankruptcy action, which was originally assigned to Judge Catherine Peek McEwen, was reassigned to Judge K. Rodney May. See (Case No. 8:11-bk-13785-KRM, Doc. # 543).

In May of 2011, Chesley received a lump sum payment of $336,643.56 from the settlement proceeds. (Id. at ¶ 4). According to Chesley's testimony at the 341 meetings of creditors, Chesley spent a portion of the settlement proceeds to pay off his home mortgage, purchase a 2011 Ford F-450 truck, repair his home and pay friends and family members. (Id. at ¶ 7).

"The remaining net proceeds . . . from the personal injury settlement were held by [Chesley's] personal injury attorney, Phil Chanfrau, and another attorney, John Mangelli, he had retained to resolve the claims of parties who were asserting liens against the proceeds." (Id. at ¶ 5). "Three parties who asserted a lien against the proceeds, which was transferred from Attorneys Chanfrau and Mangelli to [Chesley's] bankruptcy attorney, have been settled and the approximate $175,000 left of the remaining proceeds are being held in [Chesley's] bankruptcy counsel's trust account." (Id. at ¶ 8).

In the bankruptcy case, Chesley asserted claims of exemptions and filed an Amended Schedule C, which listed among the exemptions:

> Suntrust Account No. 2193 ($32,399.64); 2011 Ford
> F[-]450 SD ($45,000.00); [Chesley's counsel's]

> trust account ($340,000.00); proceeds from personal injury lawsuit "identified as lost wages" ($695,000.00); proceeds from personal injury lawsuit "identified as past medical expenses" ($80,000.00); proceeds from personal injury lawsuit "identified as future medical expenses" ($420,000.00); proceeds from personal injury lawsuit "identified as past lost wages or earning ability" ($130,000.00).

(Doc. # 1-2, Doc. # 1-15, Doc. # 12 at 11–12). According to Chesley, the "monetary assets" were exempt from creditors' claims as "disability income benefits" pursuant to Fla. Stat. §§ 222.14, 222.18, 222.201, and the liquid assets were exempt under 11 U.S.C. § 522(d)(10). (Doc. # 12 at 8). With regard to the 2011 Ford F-450 truck, Chesley contended that it was exempt under Fla. Stat. § 222.25(1) and In re Harrelson, 311 B.R. 618 (Bankr. M.D. Fla. 2004). (Id.). The Chapter 13 Trustee and Timothy Beahan, a creditor, objected to Chesley's claimed exemptions. (Doc. ## 1-10, 1-11, 1-13, 1-14).

On July 15, 2013, the Chapter 13 Trustee filed his motion for summary judgment on amended trustee's objection to Chesley's property claimed as exempt. See (Doc. # 1-16). At a hearing on August 20, 2013, the Bankruptcy Court granted the motion, thereby sustaining the objections to Chesley's claimed exemptions. (Case No. 8:11-bk-13785-KRM, Doc. # 442; Doc. # 1-26). The Order granting the Chapter 13 Trustee's

motion for summary judgment was entered on September 23, 2013. <u>See</u> (Doc. # 1-2). Therein, the Bankruptcy Court held that: (1) the proceeds from Chesley's settlement of his personal injury suit with Parts Depot, Inc., including the remaining funds held in Chesley's attorney's trust account from the settlement, are not exempt; (2) the funds in Chesley's bank account as of the petition date are not exempt; and (3) Chesley's 2011 Ford F-450 is not exempt, except to the extent of $1,000.00 as permitted under Fla. Stat. § 222.25(1). (Doc. # 1-2 at ¶¶ 3-5). The Order further provided that:

> [Chesley] shall have through October 4, 2013, within which to file a motion for reconsideration of this [O]rder on the condition that he provides with said motion a certified copy of an applicable insurance policy that includes a specific provision for a disability income benefit, and furnishes a copy of such policy to the Chapter 13 Trustee, the United States Trustee and counsel for Creditor, Timothy Beahan.

(<u>Id.</u> at ¶ 6).

On October 7, 2013, Chesley filed an amended motion for reconsideration and rehearing along with a copy of the applicable insurance policy. (Doc. # 1-23). On October 28, 2013, the Bankruptcy Court conducted a hearing on Chesley's amended motion for reconsideration and rehearing. (Case No. 8:11-bk-13785-KRM, Doc. # 460; Doc. # 1-27). At the hearing,

the Bankruptcy Court affirmed its prior ruling granting the Chapter 13 Trustee's motion for summary judgment. (Doc. # 1-27).

On November 4, 2013, Chesley filed a notice of appeal of the Bankruptcy Court's Order granting the Chapter 13 Trustee's motion for summary judgment. (Case No. 8:11-bk-13785-KRM, Doc. # 469). Thereafter, on November 5, 2013, Chesley filed his motion for stay pending appeal with the Bankruptcy Court. (Id. at Doc. # 470).

On November 21, 2013, the Bankruptcy Court entered an Order converting the Chapter 13 bankruptcy action to Chapter 7 and setting a hearing on the disbursement of funds held by the Chapter 13 Trustee. (Id. at Doc. # 482). The Bankruptcy Court appointed Susan K. Woodard as the Chapter 7 Trustee on November 21, 2013. (Id. at Doc. # 484).

On December 16, 2013, the Bankruptcy Court entered an Order granting in part and denying in part Chesley's motion to stay pending appeal. (Id. at Doc. # 523). Therein, the Bankruptcy Court decided that the $175,000 in personal injury proceeds currently in the Trust Account of Chesley's former counsel should be placed in a Trust Account for the Chapter 7 Trustee, to be held in a non-IOTA interest-bearing account by the Trustee's counsel until further Order of the Bankruptcy

6

Court. (Id. at Doc. # 523 at ¶ 1). However, the Bankruptcy Court declined to otherwise stay the bankruptcy case, which generally denied a stay as to the 2011 Ford F-450 truck. (Id. at Doc. # 523 at ¶ 2).

On December 30, 2013, the Bankruptcy Court entered a supplemental order granting in part and denying in part Chesley's motion for stay pending appeal. (Id. at Doc. # 533). In the supplemental order, the Bankruptcy Court added findings concerning its decision to deny the stay regarding Chesley's 2011 Ford F-450 truck. (Id.).

Thereafter, on January 2, 2014, Chesley filed his amended disputed motion for stay of bankruptcy case pending appeal in this Court (Doc. # 8), which was granted in part and denied in part on February 10, 2014 (Doc. # 23). According to this Court's Order,

> [T]he $175,000 in personal injury proceeds currently in the Trust Account of Chesley's former counsel, David Steen, Esquire, shall be transferred to a Trust Account for the Chapter 7 Trustee, Susan K. Woodard, to be held by her counsel until further order of the Bankruptcy Court and shall not be made part of the bankruptcy estate. The Trustee may not disburse any part of said funds prior to resolution of the appeal and further order of the Bankruptcy Court. Nor may the Trustee disburse any funds resulting from the sale of Chesley's 2011 Ford F-450 truck absent further order.

> [However,] the Chapter 7 Trustee is not stayed from
> other actions in administering the bankruptcy
> estate other than as defined in the Court's Order,
> including Chesley's 2011 Ford F-450 truck.

(Id.).

Now, before the Court is Chesley's appeal of the Bankruptcy Court's Order granting Chapter 13 Trustee's Motion for Summary Judgment on Amended Trustee's Objection to Debtor's Property Claimed as Exempt on Amended Schedule C and Creditor Timothy Beahan's Joinder in Trustee's Motion for Summary Judgment. (Doc. # 1-2). Chesley filed his Appellant brief on January 10, 2014. (Doc. # 12). Susan K Woodard – as the current Trustee[2] - filed her Appellee brief on January 24, 2014. (Doc. # 18). Thereafter, Appellee-Creditor Timothy Beahan filed a notice indicating that he joins the brief of Susan K Woodard. (Doc. # 19). On February 7, 2014, Chesley filed a reply brief. (Doc. # 22). This Court has reviewed the parties' briefs and the record before the Court and is otherwise fully advised in the premises.

---

[2] The Court notes that the Chapter 13 Trustee filed the underlying motion for summary judgment. However, on November 21, 2013, the Bankruptcy Court entered an Order converting the Chapter 13 bankruptcy action to Chapter 7. (Case No. 8:11-bk-13785-KRM, Doc. # 482). The Bankruptcy Court appointed Susan K. Woodard as the Chapter 7 Trustee on November 21, 2013. (Id. at Doc. # 484). Therefore, Susan K. Woodard is the Appellee in this action.

## II.  **Standard of Review**

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court.  In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). Upon entry of a final order by the bankruptcy court, a party may appeal to the district court pursuant to 28 U.S.C. § 158(a).

The standard of review employed by this Court in reviewing the bankruptcy court's findings of fact is the clearly erroneous standard of review described in Federal Rule of Bankruptcy Procedure 8013. In re Colortex, 19 F.3d at 1374. A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." Crawford v. W. Elec. Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984)(citing United States v. United States Gypsum Co., 333 U.S. 364 (1948)). This Court reviews de novo the legal conclusions of the bankruptcy court. In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993).

Federal Rule of Civil Procedure 56 is made applicable to bankruptcy cases through Bankruptcy Rules 7056 and 9014. In

re Ralston, 400 B.R. 854, 858 (Bankr. M.D. 2009). Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the

pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

III. **Analysis**

Chesley presents two issues on appeal: 1) "Whether the

Bankruptcy Court committed an error of law or an abuse of discretion in granting the Trustee's Motion for Summary Judgment on Amended Trustee's Objection to Debtor's Property Claimed as Exempt on Amended Schedule C in determining that the proceeds of [Chesley's] settlement of his personal injury suit with Parts Depot, Inc. including the remaining funds held in [Chesley's] attorney's trust account from the settlement are not exempt assets" and 2) "If personal injury settlement funds are designated as exempt, whether assets purchased with the personal injury settlement funds prior to bankruptcy petition filing, maintain exempt status." (Doc. # 12 at 7). The Court will address each issue in turn.

### a. **Whether Settlement Proceeds Should be Exempt from Administration of Chesley's Bankruptcy Case**

Florida has chosen to opt out of the federal exemptions and elected to apply its own exemptions. In re Cowell, 196 F.3d 1225, 1226 (11th Cir. 1999). Thus, the Bankruptcy Court, as well as this Court sitting as the appellate court, must interpret and apply the Florida exemption law in the same manner as a Florida state court. Id.

According to Chesley the "monetary assets" listed on the Amended Schedule C are exempt from creditors' claims as

12

"disability income benefits" pursuant to Fla. Stat. § 222.18,[3] which states:

> Disability income benefits under any policy or contract of life, health, accident, or other insurance of whatever form, shall not in any case be liable to attachment, garnishment, or legal process in the state, in favor of any creditor or creditors of the recipient of such disability income benefits, unless such policy or contract of insurance was effected for the benefit of such creditor or creditors.

Fla. Stat. § 222.18. Chesley further cites to Fla. Stat. § 624.605(1)(a)-(b) to define "vehicle insurance" and "casualty insurance" and demonstrate that vehicle insurance "provides disability benefits where a beneficiary has incurred disability as a result of bodily injury, especially in considering if said [beneficiary] is subject to a right of subrogation from his own disability benefits." (Doc. # 8 at ¶¶ 28-29, Doc. # 12 at 17-19); see Fla. Stat. § 624.605(1)(a)-(b).

Chesley submits that within the Hartford Insurance Policy, from which the personal injury settlement proceeds

---

[3] In the Bankruptcy Court case, Chesley conceded in his response to the motion for summary judgment that Fla. Stat. § 222.14 and 11 U.S.C § 522(d) do not apply. Therefore, Chesley abandoned these claims at that time, and has further done so on appeal. (Doc. # 1-21 at ¶ 2, Doc. # 1-26 at 6:4-5).

originated, the section Business Auto Coverage Form entails "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage,'. . . caused by an 'accident' and resulting from the ownership, maintenance or use of a covered auto." (Doc. # 12 at 22).  Further, Chesley provides that under the Policy, the term "bodily injury" means "sickness or disease sustained by a person including death from any of these." (Id.).  Therefore, it is Chesley's contention that the "Policy is in place to provide coverage for Parts Depot, Inc. in the event that one of its [employees] causes bodily harm, including disability, to a non-insured." (Id. at 23).

Thus, according to Chesley, because "an agent/employee of Parts Depot, Inc. rendered [Chesley] disabled and seriously impeded his employment and quality of life thereafter," all of Chesley's settlement proceeds received pursuant to the Parts Depot, Inc. personal injury action – which relate to the relevant Policy of Parts Depot, Inc. - are "exempt in consideration of Chesley's permanence of bodily injury sustained, such [as] that he is 'disabled.'" (Doc. # 1-2 at ¶ 7, Doc. # 8 at ¶¶ 36-37, Doc. # 12 at 23).

To support his argument, Chesley references the special verdict form (Doc. # 1-15), which according to Chesley

14

"clearly indicates the jury in the civil case clearly felt that [Chesley] should receive substantial compensation, $695,000 as 'lost earning capacity,' as well as $420,000 for future medical compensation." (Doc. # 22 at 13). Therefore, Chesley posits that the damages suggested by the jury were to be provided as disability income and medical expenses within the allowed exemption – Fla. Stat. § 222.18. (Id.). Moreover, as the special verdict form disclosed an award of $1,385,000, with roughly half of the award accounting for loss of earning capacity, Chesley argues that it would be "disingenuous to speculate that the settlement amount, which is a 10% reduction of the jury verdict, does not factor into it the disability or loss of earning capacity." (Id. at 13-14). Therefore, it is Chesley's position that as the personal injury accident rendered Chesley "disabled," the settlement proceeds he received through the general release must be exempt under Fla. Stat. § 222.18 as they are disability income benefits.

The Chapter 7 Trustee on the other hand, contends that an exemption under Fla. Stat. § 222.18 is only applicable to "disability income benefits," which Chesley's general release settlement is not. (Doc. # 18 at 5-6). Namely, the Chapter 7 Trustee submits that the record is devoid of support – reports, medical opinions or third-party documents – for

Chesley's argument that the general release settlement was paid to Chesley on account of a claim of disability income benefit. (Id. at 6). Instead, the parties to the personal injury action entered into a general release that did not provide for a specific allocation of the settlement proceeds nor any characterization of the settlement proceeds, except to state that the proceeds represented consideration for the release.[4] (Doc. # 1-16 at ¶ 16, Doc. # 18 at 9).

Therefore, according to the Chapter 7 Trustee, the "mere fact that [Chesley's] settlement was by chance funded in this case by the proceeds of 'an insurance policy' has no legal significance whatsoever under these facts." (Doc. # 1-16 at ¶ 50, Doc. # 18 at 9). What is relevant is that the nature of the proceeds attempting to be claimed as exempt are settlement

---

[4] In his reply brief, Chesley contends that "there is no record of a party challenging [Chesley's] claim of disability in bankruptcy court," and therefore, the Chapter 7 Trustee's argument on this issue is not properly before the Court on appeal. (Doc. # 22 at 14)(citing Nyland v. Moore, 216 F.3d 1264, 1265 (11th Cir. 2000)). However, upon review of the record, the Chapter 13 Trustee raised this argument at the summary judgment stage before the Bankruptcy Court - "Release of Claims executed by debtor made no reference that the amount Parts Depot, Inc. paid constituted a disability income benefit." (Doc. # 1-16 at ¶¶ 52, 54). Therefore, this Court finds that this argument is properly before the Court.

proceeds from a tort action, not disability benefits paid out under the insurance policy of Chesley. (Id.); see In re Passi, 101 B.R. 360 (Bankr. S.D. Fla. 1989)("No doubt, all tort settlements include some consideration for some loss of earning capacity, but that premise falls far short of tracing and identifying any part of this asset as exempt wages.").

Furthermore, the Chapter 7 Trustee asserts that nothing in the special verdict form referenced by Chesley indicates the general release settlement was for disability income benefits. (Doc. # 18 at 6). Thus, it is the Chapter 7 Trustee's position that the nature of the settlement in Chesley's personal injury case was not a settlement of a disability income benefit under a policy, but was in fact the settlement of a tort claim for which there is no available exemption under Fla. Stat. § 222.18.

Upon review of Fla. Stat. § 222.18, the Court finds that the Bankruptcy Court did not err in determining that the proceeds from Chesley's general release settlement were not exempt under Fla. Stat. § 222.18. While the Court acknowledges Chesley's discussion regarding the interpretation of Fla. Stat. § 222.18's use of the terms "whatever form" and "under," the Court finds that a plain reading of Fla. Stat. § 222.18 indicates that for the exemption to apply to Chesley's

17

settlement proceeds, it must be established that 1) the proceeds are disability income benefits and 2) these benefits are under a policy. See (Doc. # 12 at 16-20); Fla. Stat. § 222.18. The record before the Court fails to establish that the general release settlement satisfied these two requirements. Therefore, the Court finds that there is no genuine dispute as to whether the proceeds from the general release settlement are not exempt under Fla. Stat. § 222.18.

Specifically, the Court has reviewed the general release settlement contained in the record, and finds that the document fails to provide an allocated breakdown of what the proceeds are to represent. (Doc. # 1-19); see (Doc. # 1-26 at 9:24-25, 10:1-2). The only evidence provided by Chesley in hopes to refute this document is the special verdict form, which according to Chesley "clearly indicates the jury in the civil case clearly felt that [Chesley] should receive substantial compensation, $695,000 as 'lost earning capacity,' as well as $420,000 for future medical compensation." (Doc. # 22 at 13). However, the Court is mindful that the special verdict form was not the basis of the personal injury settlement; the parties negotiated a settlement of $1,200,000.00 and then entered the "Release of Claims."

18

Furthermore, the Court finds informative that during the hearing on the underlying motion for summary judgment, the Bankruptcy Court contacted via telephone attorney Phil Chanfrau, Chesley's former counsel. (Doc. # 1-26 at 35-36). After Chesley waived the attorney-client privilege in open court, Chanfrau informed the Court that "there was never any discussion with the – liability carrier concerning whether or not it paid disability benefits to Mr. Chesley." (Id. at 35:6). Thus, it is apparent that the parties to the general release settlement did not contemplate that the proceeds would represent disability income benefits.

Chesley cites to several cases requesting this Court, in essence, to presume that any personal injury settlement under any insurance policy is exempt under Fla. Stat. § 222.18. (Doc. # 12 at 16-20, Doc. # 1-26 at 11:17-21, 13:9-12); see Goldenberg v. Sawczak, 791 So. 2d 1078 (Fla. 2001); In re Benedict, 88 B.R. 387 (Bankr. M.D. Fla. 1988); Zuckerman v. Hofrichter & Quiat, P.A., 646 So. 2d 187, 188 (Fla. 1994). Not only are the cases cited by Chesley distinguishable from the action presently before the Court, but these cases reveal that Chesley's reading of Fla. Stat. § 222.18 would be a far stretch of the apparent meaning behind the statute.

In Zuckerman, the petitioner was receiving benefits

19

under a *disability insurance policy*, and sued the insurer when the insurer terminated the benefit payments, which eventually resulted in a settlement agreement between the parties for a general release and surrender of the policy. Zuckerman, 646 So. 2d at 187. (emphasis added). In an unrelated action, Hofrichter & Quiat obtained a money judgment against Zuckerman and upon learning of the settlement agreement filed a writ of garnishment against the settlement. Id. The Florida Supreme Court found Fla. Stat. § 222.18 to be controlling as there was no dispute about the nature of the underlying policy, and therefore, the benefits paid to Zuckerman fell within the statutory exemption and thus were not subject to garnishment. Id. However, in the instant case, Chesley has not demonstrated that the proceeds of the general release settlement were derived from a disability insurance policy or were specifically for disability income benefits, as occurred in Zuckerman. See also (Doc. # 1-26 at 14-15).

Moreover, Goldenberg v. Sawczak, 791 So. 2d 1078, 1079 (Fla. 2001), dealt with a certified question involving Fla. Stat. § 222.14, which Chesley concedes is inapplicable to the instant action. Finally, in In re Benedict, 8 B.R. 387 (Bankr. M.D. Fla. 1988), the debtors received a structured settlement

20

agreement as a result of a personal injury suit. Id. at 388. The bankruptcy court was challenged with the question of "whether an annuity issued pursuant to a structured settlement agreement and § 130 of the Internal Revenue Code may be claimed as exempt under Florida law and the Bankruptcy Code." Id. In making its determination that annuities issued pursuant to terms of structured settlements could be exempt, the Court focused on the exemptions provided in Fla. Stat. §§ 222.14 and 222.11, which are inapplicable to the present action.

Although the Court recognizes the hardship Chesley has sustained as a result of the underlying motor vehicle accident, Chesley has not provided the Court with any binding authority or support in the record to establish his contention that because the accident rendered him disabled, the settlement proceeds he received are therefore deemed "disability income benefits" and, thus, exempt under Fla. Stat. § 222.18. See (Doc. 1-26 at 22:15-17) (Bankruptcy Court stating that Chesley is "not able to tie a connection between what [he is] trying to articulate and [Fla. Stat. §] 222.18's express wording."). The record is devoid of any support illustrating that the general release settlement contemplated the proceeds be derived from a disability insurance policy or

to represent disability income benefits. Therefore, the Court finds that the settlement proceeds are not exempt under Fla. Stat. § 222.18.

### b. **Whether Assets Purchased by Chesley, Using "Exempt" Personal Injury Settlement Proceeds Prior to Filing Bankruptcy Petition, Maintain Exempt Status**

As this Court has found that the personal injury settlement proceeds are not exempt under Fla. Stat. § 222.18, the Court declines to address this issue. However, to the degree the Bankruptcy Court found that Chesley's "2011 Ford F-450 is exempt to the extent of $1,000.00 as permitted under Fla. Stat. § 222.25(1)," this Court affirms that ruling. See (Doc. # 1-2 at ¶ 5).

### IV. **Conclusion**

Upon review of the arguments presented by both parties and the record before the Court, the Court finds that there is no genuine issue of material fact as to whether the settlement proceeds Chesley received are not exempt under Fla. Stat. § 222.18. Thus, the Court finds that the Bankruptcy Court did not err when it granted the Chapter 13 Trustee's Motion for Summary Judgment on the Amended Trustee's Objection to Debtor's Property Claimed as Exempt on Amended Schedule C and Creditor Timothy Beahan's Joinder in Trustee's

Motion for Summary Judgment. Accordingly, the Bankruptcy Court's Order is affirmed.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The Bankruptcy Court's Order dated September 23, 2013, granting Chapter 13 Trustee's Motion for Summary Judgment on Amended Trustee's Objection to Debtor's Property Claimed as Exempt on Amended Schedule C and Creditor Timothy Beahan's Joinder in Trustee's Motion for Summary Judgment (Doc. # 1-2), is **AFFIRMED.**

(2) The Clerk is directed to transmit a copy of this Order to the Bankruptcy Court and, thereafter, **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 17th day of March, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record